8-3604
JSW

15W
530

1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2    Name ___WILLIAMS_____SHADRICK_____PETER_____
                    (Last)                              (First)                          (Initial)

**FILED**

3    Prisoner Number ___V22519   59   10L___

JUL 2 8 2008

4    Institutional Address ____5150   OBYRNES FERRY ROAD___
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**(PR)**

5    _____JAMESTOWN CA   95327_____

6    ====================================================================

**JSW**

UNITED STATES DISTRICT COURT
7    NORTHERN DISTRICT OF CALIFORNIA

CV 08

3604

8    SHADRICK   PETER WILLIAMS                )
     (Enter the full name of plaintiff in this action.)          )
9                                                                      )
                                                                       )
10                        vs.                                    )   Case No. _C06-1142 JSW___ (PR)
                                                                       )   (To be provided by the clerk of court)
11   S.W ORNOSKI WARDEN   (A)                      )
                                                                       )   **PETITION FOR A WRIT**
12   _____     )   **OF HABEAS CORPUS**
                                                                       )
13   _____     )
                                                                       )
14   (Enter the full name of respondent(s) or jailor in this action)   )
                                                                       )
15                                                                      )

16   ====================================================================

                              Read Comments Carefully Before Filling In

17   When and Where to File

18           You should file in the Northern District if you were convicted and sentenced in one of these

19   counties:  Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

23           If you are challenging your conviction or sentence and you were not convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located.  If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined.  Habeas L.R. 2254-3(b).

1  Who to Name as Respondent

2          You must name the person in whose actual custody you are.  This usually means the Warden or

3  jailor.  Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced.  These are not proper

5  respondents.

6          If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11      1.  What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13                 County Superior Court, Oakland):

14          SUPERIOR COURT OF SAN MATEO COUNTY        REDWOOD CITY

15                 Court                              Location

16          (b)    Case number, if known ____ SC 051074 _____

17          (c)    Date and terms of sentence  Jan. 29, 2004 (11year Term) ____

18          (d)    Are you now in custody serving this term?  (Custody means being in jail, on

19                 parole or probation, etc.)          Yes  X ___      No _____

20                 Where?

21                 Name of Institution: Sierra Conservation Center _____

22                 Address: 5150 O'Byrnes Ferry Rd., Jamestown, CA. 95327

23      2.  For what crime were you given this sentence?  (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known.  If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  Cal. H&S Code §§ 11351.5; 11352; 11351; 11370.2 and(1170.12 of the P.C.)

27  _____

28  _____

PET. FOR WRIT OF HAB. CORPUS       - 2 -

3.  Did you have any of the following?

    Arraignment:                        Yes  _X_       No _____

    Preliminary Hearing:            Yes  _X_       No _____

    Motion to Suppress:            Yes  _X_       No _____

4.  How did you plead?

    Guilty _____    Not Guilty  _X_    Nolo Contendere _____

    Any other plea (specify) _____N/A_____

5.  If you went to trial, what kind of trial did you have?

    Jury  _X_    Judge alone _____    Judge alone on a transcript _____

6.  Did you testify at your trial?             Yes _X_       No _____

7.  Did you have an attorney at the following proceedings:

    (a)    Arraignment                Yes _X_       No _____

    (b)    Preliminary hearing        Yes _X_       No _____

    (c)    Time of plea              Yes _X_       No _____

    (d)    Trial                     Yes _X_       No _____

    (e)    Sentencing               Yes _X_       No _____

    (f)    Appeal                  Yes _X_       No _____

    (g)    Other post-conviction proceeding    Yes _X_       No _____

8.  Did you appeal your conviction?        Yes _X_       No _____

    (a)    If you did, to what court(s) did you appeal?

        Court of Appeal             Yes _X_       No _____

        Year: _2-25-04_     Result: _Affirmed_

        Supreme Court of California     Yes _X_       No _____

        Year: _8-10-05_     Result: _Petition for Review (denied)_

        Any other court            Yes _____       No _X_

        Year: _____     Result:_____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

1           petition?                Yes __X__    No____

2      (c)    Was there an opinion?         Yes ____    No __X__

3      (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                   Yes ____    No __X__

5          If you did, give the name of the court and the result:

6             N/A

7

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?          Yes ____    No __X__

10        [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16      (a)    If you sought relief in any proceeding other than an appeal, answer the following

17            questions for each proceeding. Attach extra paper if you need more space.

18          I.    Name of Court: __N/A__

19               Type of Proceeding: _____

20               Grounds raised (Be brief but specific):

21                   a._____

22                   b._____

23                   c._____

24                   d._____

25                   Result: _____ Date of Result:_____

26          II.    Name of Court: __N/A__

27               Type of Proceeding: _____

28               Grounds raised (Be brief but specific):

1                    a._____

2                    b._____

3                    c._____

4                    d._____

5                    Result: _____ Date of Result:_____

6          III.    Name of Court: _____N/A_____

7                    Type of Proceeding: _____

8                    Grounds raised (Be brief but specific):

9                    a._____

10                  b._____

11                  c._____

12                  d._____

13                  Result: _____ Date of Result:_____

14        IV.    Name of Court: _____N/A_____

15                    Type of Proceeding: _____

16                    Grounds raised (Be brief but specific):

17                    a._____

18                  b._____

19                  c._____

20                  d._____

21                  Result: _____ Date of Result:_____

22     (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                    Yes _____    No__X__

24             Name and location of court: ____N/A_____

25  **B. GROUNDS FOR RELIEF**

26         State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

1    need more space. Answer the same questions for each claim.

2        [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3    petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5    Claim One:____PETITIONER'S FEDERAL DUE PROCESS RIGHTS UNDER THE

6    _____FIFTH AND FOURTEENTH AMENDMENTS WERE DENIED HIM

7    _____WHEN THE TRIAL COURT ERRONEOUSLY ALLOWED INTO

8    _____EVIDENCE TWO "ADVISED" BUT INVOLUNTARY STATEMENTS

9    _____TAKEN FROM HIM

10

11

12

13    Supporting Facts:___See: Attach Sheet

14        [Statement of the Facts and Legal Bases of the Claim]

15

16

17    Claim Three:___N/A

18

19    Supporting Facts:___N/A

20

21

22

23        If any of these grounds was not previously presented to any other court, state briefly which

24    grounds were not presented and why:   N/A    (Raised on Direct Appeal to State Court)

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1     List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case.  Do not discuss the holding or reasoning

3  of these cases:

4                    Molloy v. Hogan (1964) 378 U.S. 1

5                    Jackson V. Denno (1964) 378 U.S. 386

6                    Miranda v. Arizona (1969) 384 U.S. 436

7  Do you have an attorney for this petition?                    Yes_____    No  X

8  If you do, give the name and address of your attorney:    N/A

9                          Petitioner in Pro Se

10     WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on _____              *Shadrick Peter Williams*

14            Date **6 - 30 - 2008**                    Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

ATTACHED SHEET

## STATEMENT OF THE CASE

In March 2002, a six-count felony Information filed by the San Mateo District Attorney's office charged petitioner with possession for sale of cocaine base, cocaine, and heroin (counts 1, 3 and 5), and transportation of cocaine base, cocaine and heroin (counts 2, 4 and 6). (Health & Saf. Code, §§ 11351, 11351.5, 11352.) The Information alleged he had prior convictions qualifying for Two Strikes sentencing and a "prior drug offense" enhancement. (Pen. Code, § 1170.12, subd. (c)(1); Health & Saf. Code, § 11370.2, subd. (a).)

That year petitioner's motion to suppress evidence was granted by the Superior Court and the matter dismissed, but the People appealed and in April 2003, the grant of suppression and the dismissal order were reversed by the First Appellate District, Division One, and criminal proceedings were reinstated.

In October 2003, following a three-day jury trial, petitioner was convicted as charged; he was advised of and waived his rights, then admitted the existence of alleged prior convictions.

His <u>Romero</u> motion to dismiss the allegation of a qualifying "strike" prior was denied at the January, 2004 sentencing hearing, and he was sentenced to a total term of 11 years.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

## STATEMENT OF THE CASE

4       On November 3, 2003, Mr. Williams was found guilty by
5 a jury of twelve of having violated Health and Safety Code
6 sections 11351, 11351.5 and 11352, and admitted prior felony
7 strike convictions.

8

9

## SHADRICK PETER WILLIAMS, THE PERSON

10      Mr. Williams is a 54-year-old man who was born in San
11 Francisco to Walter and Willa Mae Williams. He attended private
12 Catholic schools at first but then he had to attend public
13 schools because his father became ill and could no longer afford
14 private education for him. He never finished high school but did
15 attain his GED. While at school, Mr. Williams was classified as
16 a slow learner.

17      During his entire adult life Mr. Williams has maintained
18 miscellaneous odd and low paying employment and has lived with
19 his mother, who denies ever seeing any drugs or drug
20 paraphernalia belonging to Shadrick. She maintains that her son
21 Shadrick is a good, hard working individual who has struggled
22 all his life with work and who has consistently helped her all
23 he can.

24      When talking to Mr. Williams one can immediately see and
25 feel a gentle, uneducated person with a low level of
26 intelligence.

27      When confronted with the facts of his case Mr. Williams
28 maintains that the drugs and drug related items that the police

- 3

Romero Motion for Shadrick Williams

1   officers reported that were found in his van were not his. He
2   also adamantly denies that he had drugs or any other contraband
3   on his person and that the voice on the tape which was played
4   for the jury during his trial is not his. He maintains that he
5   has never possessed any drugs for the purpose of sale. The
6   possession of drugs that he admits is marijuana when he was much
7   younger. Mr. Williams has always maintained that he did have
8   over $700 cash in his possession when he was detained by the
9   police. This money he had because he had just cashed his pay
10  check which was the amount he had honestly earned in a two week
11  period.

12
13                          **LEGAL ARGUMENT**
14

15  **A.    THE COURT HAS AND SHOULD EXCERSISE ITS DISCRETION TO**
16         **STRIKE DEFENDNAT'S PRIOR CONVICTION IN FURTHERANCE OF**
17         **JUSTICE**
18

19          Section 1385(a) provides that, "the judge or
20      magistrate may, either of its own motion or upon the
21      application of the prosecuting attorney, and in the
22      furtherance of justice, order an action to be
23      dismissed.    The reasons of the dismissal must be set
24      forth in an order entered upon the minutes."

25          Section 1385(a) does permit a court acting on its
26      own motion to strike prior felony conviction
27      allegations in cases brought under the Three Strikes
28      law.    (People v. Superior Court (Romero) (1996) 13

                              - 4

Cal.4th 497, 529-530.) This case reminds us that, "A long line of decisions, stretching over nearly 30 years... established that a trial court's general statutory authority to 'dismiss' an 'action in furtherance of justice' under section 1385 includes the power to 'strike' a prior conviction for purposes of sentencing, whether or not the conviction has been admitted or established by the evidence." (People v. Fritz (1985) 40 Cal.3d 227, 229-230.) "Dismissals under section 1385 may be proper before, during and after trial" (People v. Orin (1975) 13 Cal.3d 937, 947; People v. Superior Court (Howard) (1968) 69 Cal.2d 491, 503.)

In Romero, supra, our Supreme Court, relying on its decision in People v. Orin, supra, set forth guidelines for striking a strike in the furtherance of justice: "From the case law, several general principles emerge. Paramount among them is the rule 'that the language of [section 1385], "furtherance of justice," requires consideration both of the constitutional rights of the defendant, and the interests of society represented by the People, in determining whether there should be a dismissal [Citations.]' [Citations .] At the very least, the reason for dismissal must be 'that which would motivate a reasonable judge.' Courts have recognized that society, represented by the People, has a legitimate interest in 'the fair prosecution of crimes

1  properly alleged.' [A] dismissal which arbitrarily
2  cuts those rights without a showing of detriment to
3  the defendant is an abuse of discretion.
4  [Citations.]" From these general principles it follows
5  that a court abuses its discretion if it dismisses a
6  case, or strikes a sentencing allegation, solely 'to
7  accommodate judicial convenience or because of court
8  congestion.' [citations] A court also abuses its
9  discretion by dismissing a case, or a sentencing
10  allegation, simply because a defendant pleads guilty.
11  Nor would a court act property if 'guided solely by a
12  personal antipathy for the effect that the three
13  strikes law would have on a defendant.' while ignoring
14  'defendant's background,' 'the nature of his present
15  offenses,' and other 'individualized considerations'.
16  [citations.]" (Romero, supra, at 531.)

17      The California Supreme Court revisited the issue
18  in People v. Williams (1998) 17 Cal.4th 148 and set
19  forth the appropriate factors for courts to consider
20  when exercising their section 1385 discretion in Three
21  Strikes cases.

22

23  In Williams, the court made clear that courts could
24  give "no weight whatsoever. . .to factors extrinsic to
25  the [Three Strikes] scheme. On the other hand, the
26  court must accord "preponderant weight. . . to factors
27  intrinsic to the scheme such as the nature and
28  circumstances of the defendant's present felonies

- 6

1  and/or  prior  serious  and/or  violent  felony

2  convictions, and the particulars of his background,

3  character, and prospects." Id. at 161. Ultimately, a

4  court must determine whether "the defendant may be

5  deemed outside the scheme's spirit, in whole or in

6  part. Id.

7

8  **Nature of the present offense**

9  The nature of the offense for which Mr. Williams was found

10  guilty in this case is possession of large amounts of drugs for

11  sale.

12  Mr. Williams was not found holding or being in possession

13  of any weapons. According to the testimony of the officers

14  during his trial, Mr. Williams was seating in his van watching a

15  video. He did not make any attempt to flee the scene. He did not

16  resist or object to any attempt by the police to search him and

17  he fully cooperated with them and answered all of their

18  questions.

19

20  **The nature of the strike prior**

21  Mr. Williams' prior strike conviction was for violation of

22  Penal Code section 459, burglary. In 1986 upon his pleading to

23  the charge the Court found Mr. Williams guilty and he was

24  sentenced to one year in custody. While on probation in this

25  case Mr. Williams was found in possession of a controlled

26  substance and even though he was not charged with a new crime,

27  his probation was revoked and he was sent to state prison.

28

-7-

1    Mr. Williams' strike prior is for first degree burglary. In
2   that case there were no allegations of any violence perpetrated
3   by Mr. Williams. There were no allegations that Mr. Williams
4   possessed any weapons or that he verbally threatened anyone or
5   that anyone felt threatened or intimidated by his actions.

6

7    **Mr. Williams' background and prospects**

8    Mr. Williams has never been charged with a violent offense.
9   He is not a violent person.

10    As discussed above Mr. Williams' background, intelligence
11  and educational level do not portray a sophisticated criminal.

12    Prospectively, Mr. Williams intents to work the rest of his
13  productive life and to help his mother financially all he can.

14    In looking at all the above, it is clear that Mr. Williams
15  should be deemed by this Court outside of the "spirit of the
16  three strikes law." This Court has and should exercise its
17  discretion to strike defendant's prior conviction in furtherance
18  of justice.

19

20    B.    **ACTING IN THE FURTHERANCE OF JUSTICE THE COURT MUST**
21          **CONSIDER BOTH THE RIGHTS OF THE DEFENDANT AND THE**
22          **INTERESTS OF SOCIETY WHEN CONSIDERING WHETHER TO**
23          **STRIKE A PRIOR CONVICTION**

24          As provided in Romero, "furtherance of justice
25          requires consideration both of the constitutional
26          rights of the defendant and the interest of society in
27          determining whether there should be dismissal."

28

-8

(People v. Superior Court (Romero) (1996) 13 Cal.4th 497, 530.)

Some of the "interests of society" traditionally used by California courts in sentencing proceedings are codified in Rule 4.410 of the Rules of Court, (formerly Rule 410), which provides that the general objectives of sentencing include:

(a)    Protecting society.

(b)    Punishing the defendant.

(c)    Encouraging the defendant to lead a law abiding life in the future and deterring him from future offenses.

(d)    Deterring others from criminal conduct by demonstrating its consequences.

(e)    Preventing the defendant from committing new crimes by isolating him for the period of incarceration.

(f)    Securing restitution for the victims of crime.

(g)    Achieving uniformity in sentencing.

"Because in some instances these objectives may suggest inconsistent dispositions, the sentencing judge shall consider which objectives are of primary importance in the particular case.   The sentencing judge should be guided by statutory statements of policy, the criteria in these rules, and the facts and circumstances of the case."  (Rule 410.)

-9-

Romero Motion for Shadrick Williams

**CONSIDERING THE INTEREST OF SOCIETY AS CODIFIED IN RULE 4.410 OF THE RULES OF COURT THE FOLLOWING IS SUBMITTED:**

### Punishment of defendant

When considering "the interest of society" the court will find that Mr. Williams has been in custody twice in this case. Once when he was detained by the police at the scene on February 6, 2002 and later released after his case was dismissed for insufficient evidence. This case was later recalled and immediately after being notified Mr. Williams came back to court to once again phase the charges for which he had been accused before. After he self surrendered he was released on his own recognizance. He made his subsequent appearances knowing that if found guilty he could be facing a potential long term prison sentence. At one of those later proceedings Mr. Williams was remanded upon prosecutions motion to set bail at an impossible amount for him to be able to afford. Mr. Williams has been in custody ever since.

### Protecting society

As mentioned before and supported by his record, Mr. Williams is not a violent person.

After this case was initially dismissed and he was released from custody Mr. Williams went out and took all the money he had saved all his life through a 401K plan to pay for the debts that had piled up during his time in custody and to make ends meet since he was now unemployed. He looked and found odd jobs and continued helping his mother financially. No offenses were

-10

1  charged against him during this time. Mr. Williams presented no
2  threat, rather, he was trying and did in fact become a
3  productive member of society without supervision.

4  Upon his release from this case, regardless of when it
5  takes effect, Mr. Williams intends to work the rest of his
6  productive life.

7

8  **Encouraging the defendant to lead a law abiding life in the**
9  **future and deterring him from future offenses**

10  It should be of outmost importance to encourage Mr.
11  Williams to lead a law abiding life and to deter him from any
12  future offense. Having this thought in mind it seems appropriate
13  that Mr. Williams be sentenced by this Court to a term in
14  custody followed by a long period of supervised probation with
15  condition that he gets counseling as determined by probation.

16  Mr. Williams is 54-years-old. Imposing a long term prison
17  term, unless suspended, would only destroy his life.

18

19  **Deterring others from criminal conduct by demonstrating its**
20  **consequences.**

21  In this case Mr. Williams was found guilty by the jury of
22  having a large amount of drugs for sale. Imposition of sentence
23  will certainly reflect this Court's assessment of the case after
24  considering the facts presented during trial and the evidence
25  presented with this motion.

26  Granted, it is the Courts duty to try and deter others from
27  criminal conduct. In addition the court has an obligation to
28  impose sentence upon those found guilty of committing crimes.

- 11

1  However, it is also the Courts obligation to do justice. To
2  achieve this goal it should impose sentences individually
3  tailored to the nature of the offense and to the individual
4  circumstances.

6  **Preventing the defendant from committing new crimes by**
7  **isolating him for the period of incarceration.**

8  As mentioned before a period of incarceration is called for
9  in this case. The question is how long a period is necessary to
10 isolate Mr. Williams to keep him from committing new crimes?

11 Mr. Williams has been in custody more than 150 days in this
12 case. In between his incarceration, he was released and was free
13 for one and a half years. During that time, Mr. Williams did
14 nothing other than work and help support his mother. The time of
15 incarceration needed in this case should not be much longer than
16 that.

17 A long period of supervised probation coupled with
18 counseling should prove in this case much more effective to
19 prevent Mr. Williams from committing any crimes.

21 **Securing restitution for the victims of crime**
22 There are no victims in this case claiming any restitution.

24 **Achieving uniformity in sentencing**

25 In a fair system of justice uniformity in sentencing is an
26 important consideration. However, it is not an absolute. The
27 Courts have consistently tailored sentences in our system
28 according to the individual circumstances and the nature of the

- 12

1  offense. In looking at the circumstances surrounding this case
2  and the non violent circumstances of the strike prior it seems
3  appropriate for this Court to allow Mr. Williams an opportunity
4  to rebuild his life by sentencing him to a period of
5  incarceration followed by a long term of supervised probation
6  and counseling as determined by probation.

8        Other  valid  considerations  recognized  by  the
9  California Supreme Court include whether "defendant's
10  prior  convictions  arose  from  a  single  period  of
11  aberrant behavior for which he served a single prison
12  term;  "whether"  defendant  cooperated  with  police;
13  "whether "his crimes were related to drug addiction;"
14  and whether "his criminal history does not include any
15  actual violence." People v Garcia (1999) 20 Cal.4th
16  490, 504.    In Garcia, the Supreme Court cautioned
17  courts not to place undo emphasis on a defendant's
18  prior  record  and  recidivism:  'While  a  defendant's
19  recidivist status is undeniably relevant, it is not
20  singularly  dispositive'  .  .  .  .  the  purpose  of
21  'ensur[ing] longer prison sentences' in Three Strikes
22  cases,  while  relevant  to  a  court's  exercise  of  its
23  section 1385 discretion, does not 'predominate the
24  trial court's exercise of [that] discretion,' which
25  'would be one step shy of declaring the three strikes
26  law eliminates the court's [ section 1385] discretion
27  entirely.' "  (Garcia, supra, 20 Cal.4th at p. 501,

- 13

quoting People v. Superior Court (Alvarez) (1997) 14 Cal.4th at p. 973, 979.)

The Court of Appeal has also upheld the length of a defendant's sentence as an appropriate factor for consideration: "The length of sentence to be imposed also presents an open-ended inquiry because, when considered in conjunction with the defendant's age, it presents the trial court with an opportunity to evaluate factors such as how long the state maintains an interest in keeping the defendant as a public charge and after what period of incarceration he is no longer likely to offend again." People v. Bishop, (1997) 56 Cal.App.4th 1245, 1250.

Evaluation and balancing of each of the factors set forth above yields an individualized determination of the propriety of dismissing a strike prior. "When the balance falls clearly in favor of the defendant a trial court not only may but should exercise the powers granted to him by the Legislature and grant a dismissal in the interests of justice." (Howard, supra, 69 Cal.2d at 505.) Of significant and perhaps predominant consideration in determining whether to strike prior convictions is certainly the nature of the present offense. A defendant whose current offense is not violent or life threatening is obviously far less culpable than one whose current crime is more serious. As the Supreme Court held in Garcia, "A

-14-

court might therefore be justified in striking prior conviction allegations with respect to a relatively minor current felony, while considering those prior convictions with respect to a serious or violent current felony." (Garcia, supra, 20 Cal.4th 490, 499.) Even when defendants have extensive records, the minor and non-aggravated nature of the current offense is a powerful factor that can support dismissal of "strike" priors. (See In re Saldana (1997) 57 Cal.App.4th 620; People v. Bishop (1997) 56 Cal.App.4th 1245.)

In In re Saldana, supra, the court held that it was appropriate to base its decision to strike a strike on a multiple of individualized sentencing factors, and not merely on defendant's criminal record, since considering a defendant's criminal history only is "incompatible with the very nature of sentencing decisions; the entire picture must remain exposed."

The Bishop case held that there was no abuse of discretion when the trial court struck two of defendant's prior convictions, despite defendant's lengthy record of nine prior convictions, where the nature of new crime is petty theft and prior violent offenses were remote. (See People v. Bishop, supra, at 1249-1251.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Supreme Court in Garcia also approved the trial court's dismissal of priors based on the following reasons: [i] "defendant's prior convictions all arose from a single period of aberrant behavior for which he served a single prison term. [ii] Defendant cooperated with police, [iii] his crimes were related to drug addiction, and [iv] his criminal history does not include any actual violence." (Garcia, supra, 20 Cal.4th 490, 503, emphasis added.)

Most "strike" defendants have bad records but that alone does not preclude the court from dismissing prior strike convictions. Under Romero, Williams and Garcia the trial court must consider whether appellant's background, current felony offense, character, prospects, and other individualized considerations should be deemed inside or out of the "spirit of the three strikes law."

In light of all of the information that has been presented to this Court on Mr. Williams's behalf, he should be deemed outside of the "spirit of the three strikes law." Thus, it would not "fall outside the bounds of reason" for the trial court in the present case to dismiss his prior "strike" conviction.

- 16

1    The *Romero-Williams-Garcia* analysis of three
2 strikes cases was extended in the recent case of
3 *People v. Cluff* (2001) 87 Cal.App.4th 991. In *Cluff*, a
4 San Mateo County case, the trial judge declined to
5 strike defendant's "strike" convictions at sentencing.
6 The Court of Appeals reversed and remanded for re-
7 sentencing after holding that the trial court's
8 failure to strike the strikes was an abuse of
9 discretion. Among other factors, the Court of Appeal
10 noted that Mr. *Cluff's* present crime was not one of
11 violence.

12    Finally *Cluff* noted that a court is not only
13 entitled, but indeed is obligated to ensure that the
14 punishment in a given case fits the crime.

15    On remand, the trial court should keep in mind
16 that "a decision to strike a prior is to be an
17 individualized one based on the particular aspects of
18 the current offenses for which the defendant has been
19 convicted and on the defendant's own history and
20 personal circumstances. This approach allows the
21 court to perform its obligation to tailor a given
22 sentence to suit the individual defendant." (Emphasis
23 added.) (*People v. Cluff*, *id.*, at 1004.) (Emphasis
24 added.)

26    **C.  MR. WILLIAMS' BACKGROUND, THE CIRCUMSTANCES OF THE**
27    **PRESENT CASES AND HIS PROSPECTIVE PLANS JUSTIFY**
28    **"STRIKING THE STRIKE"**

- 17

In examining the general objectives in sentencing and the other factors set forth above it is revealed that there are several bases for striking the prior felony conviction in this case.

The present crime does not involve any "violence."

Mr. Williams's sole conviction for a serious felony took place seventeen years ago.

Most defendants who have been convicted of "strike" felony offenses have bad criminal records but that fact alone does not preclude the court from dismissing prior strike convictions. The court must consider whether appellant's background, current felony offense, character, prospects, and other individualized considerations should deem the defendant to be inside or out of the "spirit of the three strikes law."

When considering the information and evidence presented in this case on behalf of Mr. Williams, he should be deemed to be outside of the "spirit of the three strikes law." It would not "fall outside the bounds of reason" for this Court to dismiss Mr. Williams's prior "strike" conviction.

Mr. Williams was convicted of crimes that were drug and theft related. He has been to prison once for probation violation.

## CONCLUSION

For all the above reasons mentioned, Mr. Williams should be sentenced to a period of probation with a term in county jail. If this Court feels compelled to sentence Mr. Williams to state prison, then it seems appropriate in this case that a long term

- 18

Signature of Pertitioner
Shadrick Pato William
June 28, 2008
Jamestown CA, 95327

UNITED STATES DISTRICT COURT

_____ DISTRICT OF CALIFORNIA

_Shadrick Williams_ )
                    )
          Petitioner, )
                    )   CASE NO. _C06 - 1142 JSW(PR)_
V.                  )
_S. W. Ornoski Waden(A)_ )
                    )   **PROOF OF SERVICE BY MAIL**
                    )
          Respondent. )

I am a citizen of the United States and a resident in the state of California. I'm currently
incarcerated in a California State Prison. I'm over the age of 18 years, and a party to the within
action.

I served the following document to each of the persons named below at the address shown. By
placing a true copy in a sealed envelope with postage fully prepaid, in the U.S. Mail at the
Institutional mailroom.

**DOCUMENT:**

_Petition For A Writ of habens Corpus by A Person in State custody_
_United Stat District covet Northeen District of california_

**PARTIES SERVED:**

_Ninth Circuit Court Northen District_
_95 7st P.O. Box CA 193939_
_San Francisco CA, 94119_

I declare under penalty of perjury the above statements are true and correct. This document
executed on the _June_ Day of ___28___ 200_8_ , in the city of
_Jamestown_, California. By: _Shadrick Williams_ <small>print your name</small>

SIGNED: _Shadrick Williams_

# "EXHIBIT A"



1
2
3
4
5
6
7

8           IN THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   SHADRICK PETER WILLIAMS,              )    No. C 06-1142 JSW (PR)
                                          )
12           Petitioner,                   )    **ORDER DENYING**
                                          )    **PETITION FOR WRIT OF**
13     vs.                                 )    **HABEAS CORPUS**
                                          )
14   S.W. ORNOSKI,                         )
                                          )
15           Respondent.                   )
                                          )
16   _____ )

17                         **INTRODUCTION**

18         Shadrick Peter Williams (hereinafter "Petitioner"), a prisoner of the State of California

19   who is incarcerated at Sierra Conservation Center, in Jamestown, California, has filed a pro se

20   petition for a writ of habeas corpus under 28 U.S.C. § 2254.  This Court ordered Respondent to

21   show cause why a writ should not issue.  Respondent filed an answer, memorandum and

22   exhibits in support thereof and Petitioner filed a traverse.  For the reasons stated below, the

23   petition is denied on the merits.

24                     **PROCEDURAL BACKGROUND**

25         In March 2002, Petitioner was charged with possession for sale and transportation of

26   cocaine base, cocaine, and heroin in San Mateo County Superior Court.  He moved to suppress

27   the drugs as the product of a consent search that was tainted by an illegal detention.  *People v.*

28   *Williams*, No. A105683, slip op. at 1 (Cal. Ct. App. May 27, 2005) (Resp. Ex. B).  The trial

1 court granted the motion to suppress and dismissed the case without reaching the remaining

2 issues. After an appeal by the People, in April 2003, the California Court of Appeal reversed

3 the dismissal of the charges. *People v. Williams*, No. A098662, 2003 Cal. App. Unpub. LEXIS

4 3616 (Cal. Ct. App. Apr. 10, 2003).

5 On November 3, 2003, following a retrial, a jury convicted Petitioner of possession for

6 sale and transportation of cocaine base, cocaine and heroin. On January 29, 2004, the trial

7 court sentenced Petitioner to eleven years imprisonment. Petitioner appealed to the California

8 Court of Appeal, which affirmed Petitioner's conviction on May 27, 2005, and to the Supreme

9 Court of California, which denied Petitioner's petition for review on August 10, 2005.

10 Petitioner filed the instant petition on February 16, 2006.

11 **FACTUAL BACKGROUND**

12 The facts underlying the charged offenses, as found by the California Court of Appeal,

13 are summarized as follows:

14     At 9:45 p.m. on February 6, 2002, South San Francisco Police Officer
Sanders was dispatched to the Magnolia Senior Center (Center), in response to a
15 report of a disturbance at the Center involving a mother and daughter. Sanders
"was told that somebody had been hit in the head with a cellular phone."
16

17     As Sanders pulled into the parking lot of the Center, he heard a female
"yelling profanities to someone in the area." He did not at first see who was
18 yelling, but he saw a Ford van double-parked in the lot. Saunders pulled up
directly behind the van, so the van could not possibly back out, and got out of his
19 patrol car. He saw the woman running from the Center towards the van. The
woman was "yelling" and Saunders assumed she was the woman he had heard
20 when he first arrived.

21     Saunders spoke to the woman as she reached the passenger side of the van.
The woman was "very excited and very [much] in a hurry to leave." She denied
22 being involved in the disturbance, and claimed she was in a hurry because she
was late for work.
23

24     . . . .

25     While he was talking to the woman, Saunders saw defendant sitting behind
the wheel of the van. Saunders spoke to defendant to see if he knew the identity
26 of the woman who had been yelling, and "why they were at the Magnolia Senior
Center." Defendant told Saunders he had driven the woman to the Center so she
27 could pick up mail, but defendant could not tell Saunders the woman's name.

28

2

. . . .

Officer Campbell [and Officer Chetcuti] . . . arrived at the scene as Officer Saunders was talking to the woman and the defendant was sitting in the van. In apparent contradiction to Saunders' testimony that his patrol car prevented defendant from backing out of the parking lot, Campbell admitted on cross-examination that defendant "had access to pull out of the driveway."

. . . .

The officers asked defendant for identification. He turned over a valid California driver's license, which showed "clear" on a computer records check. The driver's license was not initially returned to the defendant.

In the course of the investigation, the female provided the officers with "numerous names before [they] finally found her true identity." Defendant told the officers he did not know the woman's name, but he did know her purse was in the van. Defendant handed the purse to Campbell and Chetcuti, who looked through the purse for identification. They found two glass pipes used for smoking controlled substances.

After the pipes were found the woman was arrested. Campbell asked defendant to get out of the van. He did not tell defendant he was being detained. Campbell believed there might be drugs or drug paraphernalia in the van, due to the discovery of the pipes in the purse and the fact the woman had obviously been inside the van. Campbell asked defendant if there were any drugs or paraphernalia in the van, and he said no.

Campbell asked defendant for permission to search him and to search his van. Defendant replied "that he did not have any drugs inside the car, and that I was free to check his person and the vehicle." As Campbell began to pat the defendant down, defendant told Campbell there was cocaine and heroin in a black vinyl case behind the left rear passenger seat. Campbell opened the case and discovered individually wrapped bindles of cocaine and heroin, drug paraphernalia, and scales. Defendant was arrested and Campbell found more bindles of cocaine and heroin in defendant's jacket."

Campbell's trial testimony amplifies these facts. As Campbell started to pat defendant down, defendant "made a spontaneous statement of, quote, I have some cocaine and heroin in the van." Defendant "directed" Campbell to the black case containing the drugs and paraphernalia. Campbell then arrested defendant and found more drugs in his jacket pockets, as well as $749 cash.

Campbell then read defendant his *Miranda* rights. He asked defendant if he understood those rights. Defendant "said he understood his rights and wanted to give [Campbell] a statement." Defendant told Campbell "basically that he had been in the, quote, game for a long time and that it was time for him to come clean," and "that the drugs in the car were solely his and that he had been selling drugs for approximately four years." Defendant gave "pretty much a detailed statement as to . . . how he packaged the drugs, how much he sold them for, stuff

3

1    like that."

2        . . . .

3        Campbell transported defendant to the police department, where he took a
4    second statement from defendant at 11:30 p.m. At the outset of the statement
     Campbell reminded defendant that "[w]e've already read you your *Miranda* rights
5    . . . ." Defendant acknowledged that he had already been read his rights and
     agreed to talk to Campbell. In this second statement defendant admitted he had
6    been selling cocaine, crack cocaine, and heroin for four years. This statement was
     audiotaped and played for the jury.
7
8    (Resp. Ex. B at 2-5) (citing *Williams*, 2003 Cal. App. Unpub. LEXIS 3616, at *2-6).

9                            **STANDARD OF REVIEW**

10        This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in

11   custody pursuant to the judgment of a state court only on the ground that he is in custody in

12   violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The

13   petition may not be granted with respect to any claim that was adjudicated on the merits in state

14   court unless the state court's adjudication of the claim: "(1) resulted in a decision that was

15   contrary to, or involved an unreasonable application of, clearly established Federal law, as

16   determined by the Supreme Court of the United States; or (2) resulted in a decision that was

17   based on an unreasonable determination of the facts in light of the evidence presented in the

18   State court proceeding." 28 U.S.C. § 2254(d).

19        Under the "contrary to" clause, a federal habeas court may grant the writ if the state

20   court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

21   or if the state court decides a case differently than the Supreme Court has on a set of materially

22   indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable

23   application" clause, a federal habeas court may grant the writ if the state court identifies the

24   correct governing legal principle from the Supreme Court's decision but unreasonably applies

25   that principle to the facts of the prisoner's case. *Id.* As summarized by the Ninth Circuit: "A

26   state court's decision can involve an 'unreasonable application' of federal law if it either 1)

27

28

                                    4

1  correctly identifies the governing rule but then applies it to a new set of facts in a way that is

2  objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to

3  a new context in a way that is objectively unreasonable." *Van Tran v. Lindsey*, 212 F.3d 1143,

4  1150 (9th Cir. 2000) (citing *Williams*, 529 U.S. at 405-07), *overruled in part on other grounds*

5  *by Lockyer v. Andrade*, 538 U.S. 63 (2003).

6
7       "[A] federal habeas court may not issue the writ simply because that court concludes in

8  its independent judgment that the relevant state-court decision applied clearly established

9  federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

10  *Williams*, 529 U.S. at 411; *accord Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (per curiam)

11  (challenge to state court's application of governing federal law must be not only erroneous, but

12  objectively unreasonable); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam)

13  ("unreasonable" application of law is not equivalent to "incorrect" application of law).

14       In deciding whether the state court's decision is contrary to, or an unreasonable

15  application of clearly established federal law, a federal court looks to the decision of the highest

16  state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v.*

17  *Thompson,* 217 F.3d 663, 669 n.7 (9th Cir. 2000).

18                                    **DISCUSSION**

19       Petitioner claims that the admission of two statements he made after receiving his

20  *Miranda* warnings violated his Fifth and Fourteenth Amendment rights.[1]  Petitioner argues that

21  his statement to the police at the scene of the arrest, immediately after receiving the warnings,

22  should not have been admitted because it was made involuntarily.  He also contends that a

23  second statement he made to the police at the station house should not have been admitted

24
25

26  ───────────────
   [1] Petitioner does not challenge the admissibility of the spontaneous statement he
27  made during the search of his person before he was read his *Miranda* rights.  To the
   extent that Petitioner wanted to make such a claim, it would not be exhausted and, as
28  such, could not be considered in this review.  28 U.S.C. § 2254(b), (c).

                                          5

because "the initial taint from the first involuntary waiver of rights continued through the second interrogation at the station." (Traverse at 22). For the reasons discussed below, neither of these claims can be substantiated by the record. Accordingly, the petition for a writ of habeas corpus must be denied.

In *Miranda v. Arizona*, 384 U.S. 436 (1996), the Supreme Court held that certain warnings must be given, advising a suspect of his rights, before a suspect's statement made during custodial interrogation can be admitted in evidence. Once properly advised of his rights, an accused may waive them voluntarily, knowingly and intelligently. *See Miranda*, 384 U.S. at 475. A valid waiver of *Miranda* rights depends upon the totality of the circumstances, including the background, experience and conduct of the defendant. *See United States v. Bernard S.*, 795 F.2d 749, 751 (9th Cir. 1986). A showing that the defendant knew his rights generally is sufficient to establish that he knowingly and intelligently waived them. *See Paulino v. Castro*, 371 F.3d 1083, 1086-87 (9th Cir. 2004). To be voluntary, the relinquishment must have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The California Court of Appeal found no evidence of an involuntary waiver that would justify excluding Petitioner's two statements from trial. (Resp. Ex. B at 5-6). In so ruling, the Court of Appeal applied the federal standard set forth above for determining whether Petitioner waived his *Miranda* rights knowingly, voluntarily, and intelligently. (Resp. Ex. B at 6). Because the Court of Appeal applied the correct federal standard, its decision was not "contrary to" clearly established federal law within the meaning of 2254(d)(1). *See Williams*, 529 U.S. at 413.

The California Court of Appeal also reasonably applied federal law in denying

6

1  Petitioner's claim. The court found that "[c]ases have repeatedly found an implied *Miranda*
2  waiver where the accused, having been read his rights and indicated he understood them,
3  proceeded to speak with police officers without requesting an attorney - especially when the
4  defendant knew the interview was being recorded." (Resp. Ex. B at 6). The court noted that
5  there was no evidence of police coercion; rather Petitioner had experience dealing with the
6  criminal justice system and despite that experience, he expressed a willingness to talk with the
7  officers. (Resp. Ex. B at 6). Since the second statement at the station house was made less than
8  two hours after the statement at the scene of the arrest, the court found "substantial evidence
9  that the defendant's waivers of his *Miranda* rights were free and voluntary." (Resp. Ex. B at 6).
10

11  **A.    Admissibility of the Statement at the Scene of the Arrest**

12      After the police approached his van, Petitioner retrieved his female passenger's purse
13  from inside his van and handed it to Officer Campbell. After finding drug paraphernalia in the
14  purse, Petitioner consented to a search of his van and person. While being patted down,
15  Petitioner told Campbell that there were drugs in the car and where the drugs were. Campbell
16  retrieved the drugs, then arrested Petitioner and read the *Miranda* warnings. Petitioner stated
17  that he understood his rights, but that he wanted to make a statement anyway. He admitted that
18  the drugs were his, that he had been selling drugs, and described other details about selling
19  drugs.

20      The Court of Appeal reasonably found that Petitioner's statement after receiving his
21  *Miranda* warnings was admissible because his waiver of such rights was voluntary.[2] *Miranda,*
22

23  _____
24      [2] Here, Petitioner only challenges the voluntariness of his waiver, and not whether
    it was knowing and intelligent. In the event that Petitioner was challenging the knowing
25  and intelligent quality of his waiver, he would not succeed. Petitioner's previous
    experience with the criminal justice system and the fact that he replied affirmatively when
26  asked if he understood his rights indicated that his waiver of them was knowing and
    intelligent. *See, e.g., Paulino v. Castro,* 371 F.3d at 1086-87 (finding that a showing that
27  the defendant knew his rights generally is sufficient to establish that he knowingly and
28  intelligently waived them).

7

1  384 U.S. at 475. Respondent has the burden of proving voluntariness and can meet this

2  obligation by showing that, after a careful consideration of relevant factors, the totality of

3  circumstances indicates that the waiver was the "product of free and deliberate choice. . . ."

4  *Moran*, 475 U.S. at 421. Factors indicating voluntariness can include, but are not limited to,

5  degree of police coercion, defendant's education, and defendant's maturity. *Withrow v.*

6  *Williams*, 507 U.S. 680, 693 (1993). Also, defendant's experience with the criminal justice

7  system will be considered. *See Bernard S.*, 795 F.2d at 751.

8
9          The record is devoid of facts that would indicate coercion. After receiving his warnings,

10  Petitioner nevertheless expressed that he understood his rights and wanted to make a statement.

11  Petitioner suffered no physical abuse, promise of leniency, threats or other psychological ploy.

12  Further, by saying "it was time for him to come clean" after receiving *Miranda* warnings,

13  Petitioner expressed a willingness to discuss his offenses with the officers. (Mem. P. & A. at 6).

14  As "a waiver cannot be held involuntary absent official compulsion or coercion," the analysis of

15  voluntariness need not continue to the other factors. *Colorado v. Connelly*, 479 U.S. 157, 170

16  (1986). Nevertheless, the fact that Petitioner is 53 years-old, has obtained his high-school

17  equivalency degree, and has prior experience with the criminal justice system, including prior

18  convictions for related offenses, further dispels any doubt as to the voluntariness of his waiver.

19  The lack of coercion and Petitioner's personal characteristics substantiates the voluntariness of

20  Petitioner's waiver. *See id.*

21          Petitioner urges that the circumstances surrounding his statement at the scene of the arrest

22  were coercive and illustrates this point by referencing to the fact that he was surrounded by "a

23  show of force (three armed policemen in three marked patrol cars); by all but blocking him from

24  physically driving off the premises; by depriving him of his identification . . . and by asking him

25  to leave his van and patting him down. . . ." (Traverse at 22). In making this argument,

26
27  Petitioner misunderstands the relevance of these facts. Taken together, they can be used to show

28

8

1  that the Petitioner was in "custody" at the time the statement was made; and thus that *Miranda*

2  warnings were required. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The record is

3  clear that the police gave Petitioner *Miranda* warnings, and that Petitioner voluntarily waived

4  those rights. There is no evidence that Petitioner's will was overborne such that his statements

5  should be considered involuntary.

6      **B.    Admissibility of the Statement at the Station House**

7      After his arrest, Petitioner was transported to the station house where he made a second

8  statement, identical to the first statement at the scene of the arrest; this second statement was

9  audiotaped. Before obtaining this statement, Officer Campbell reminded Petitioner that *Miranda*

10 warnings had already been issued. Petitioner acknowledge that he had already received the

11 appropriate warnings and agreed to talk to Campbell.

12     Petitioner argues that his statement to the police at the station is inadmissible because it

13 was tainted by his earlier waiver of his *Miranda* rights, which waiver Petitioner contends was

14 invalid.[3] Because Petitioner's waiver was, for the reasons discussed above, voluntary, there was

15 nothing to "taint" the statement made at the station.

16     The Court of Appeals reasonably found that Petitioner's waiver of his *Miranda* rights was

17 knowing, voluntary and intelligent. *Miranda*, 384 U.S. at 475. The evidence in the record

18 surrounding Petitioner's waiver establishes the voluntariness of the statement at the scene of the

19 arrest. *Connelly*, 479 U.S. at 170. Because the statement at the scene of the arrest was

---

23 [3] Petitioner "does not challenge his second, recorded statement to police as having
been obtained without any advisement of *Miranda* . . . ." (Traverse 23 n.8.) In any event,
24 in *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1130 (9th Cir. 2005), *amended by*
416 F.3d 939 (9th Cir. 2005), the Ninth Circuit determined that statements made sixteen
25 hours after original *Miranda* warnings were sufficiently close in time that no re-
advisement was required. Here, less than two hours elapsed between the *Miranda*
26 advisement and Petitioner's second statement at the station house. Thus, readvisement
was not necessary and the record reflects that Petitioner indicated that he remembered his
27 *Miranda* rights in any event.
28

9

1  admissible, the second statement at the station house was also admissible as it cannot be said to

2  have been tainted by his earlier waiver. Accordingly, the Court of Appeals' finding, that both

3  statements were admissible was neither contrary to nor an unreasonable application of federal

4  law.

5                                        **CONCLUSION**

6       For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk

7  shall enter judgment for Respondent and close the file.

8       IT IS SO ORDERED.

9

10  DATED: June 10, 2008

11                                        JEFFREY S. WHITE
                                          United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              10

1    UNITED STATES DISTRICT COURT

2                    FOR THE

3    NORTHERN DISTRICT OF CALIFORNIA

4

5

6    SHADRICK P WILLIAMS,                    Case Number: CV06-01142 JSW

7            Plaintiff,                      **CERTIFICATE OF SERVICE**

8    v.

9    S W ORNOSKI, WARDEN et al,

10           Defendant.
                                    /
11

12   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
13   Court, Northern District of California.

14   That on June 10, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said
     copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing
15   said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery
     receptacle located in the Clerk's office.
16

17

18   Shadrick P. Williams
     V-22519
19   5150 O'Byrnes Ferry Road
     Jamestown, CA 95327
20

21

22   Dated: June 10, 2008                    *Jennifer Ottolini*

23                                           Richard W. Wieking, Clerk
                                             By: Jennifer Ottolini, Deputy Clerk
24

25

26

27

28

**ORIGINAL**
**F I L E D**

JUN 1 U 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SHADRICK PETER WILLIAMS, | ) | No. C 06-1142 JSW (PR) |
| Petitioner, | ) | **JUDGMENT** |
| vs. | ) | |
| S.W. ORNOSKI, | ) | |
| Respondent. | ) | |

The Court has denied the petition for a writ of habeas corpus. A judgement in favor of Respondent is entered. The clerk shall close the file.

IT IS SO ORDERED.

DATED:  June 10, 2008

_Jeffrey S White_

JEFFREY S. WHITE
United States District Judge

| 1 | UNITED STATES DISTRICT COURT |
|---|---|
| 2 | FOR THE |
| 3 | NORTHERN DISTRICT OF CALIFORNIA |

1            UNITED STATES DISTRICT COURT

2                    FOR THE

3         NORTHERN DISTRICT OF CALIFORNIA

4

5

6   SHADRICK P WILLIAMS,              Case Number: CV06-01142 JSW

7          Plaintiff,             **CERTIFICATE OF SERVICE**

8     v.

9   S W ORNOSKI, WARDEN et al,

10          Defendant.

11 _____/

12   I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District

13   Court, Northern District of California.

14   That on June 10, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing

15   said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

16

17

18   Shadrick P. Williams

19   V-22519
5150 O'Byrnes Ferry Road

20   Jamestown, CA 95327

21

22   Dated: June 10, 2008            *Jennifer Ottolini*

23                         Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk

24

25

26

27

28

# "EXHIBIT B"